IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANORA EK,<br><br>            Petitioner,<br><br>vs.<br><br>MIKE McDONALD,[1] Warden (A), High Desert State Prison,<br><br>            Respondent. | No. 2:08-cv-00962-JWS<br><br>MEMORANDUM DECISION |

Petitioner Manora Ek, a state prisoner appearing though counsel, has filed a petition for habeas corpus relief under 28 U.S.C. § 2254. Ek is currently in the custody of the California Department of Corrections and Rehabilitation, incarcerated at the High Desert State Prison. Respondent has answered, and Ek has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

Following a jury trial, Ek, along with two co-defendants, Hong Le and Khammay Keomanivong, were found guilty in the San Joaquin County Superior Court of first-degree murder (Cal. Penal Code § 187), with two special circumstances, discharging a firearm from a motor vehicle with the intent to inflict death (Cal. Penal Code § 190.2(a)(21)), being an active participant in a criminal street gang and carrying out the murder to further the activities of the gang (Cal. Penal Code § 190.2(a)(22)), and six counts of attempted murder (Cal. Penal Code §§ 187, 664) against six identified ASW members. As to all of these counts, the jury found two

---

[1] Mike McDonald, Warden (A), High Desert State Prison, is substituted for Tom Felker, Warden, High Desert State Prison. Fed. R. Civ. P. 25(d).

firearm enhancements (Cal. Penal Code § 12022.53(c) and (d)), and a gang enhancement (Cal. Penal Code § 186.22(b)(1). All defendants were also convicted of discharging a firearm from a motor vehicle (Cal. Penal Code § 12034(c)), with gun use (Cal. Penal Code § 12022.53(d)) and gang (Cal. Penal Code § 186.22(b)(1)) enhancements, and street terrorism (Cal. Penal Code § 186.22(a)). In addition, Ek was convicted of permitting another to shoot from a motor vehicle (Cal. Penal Code § 12034(b)). The trial court sentenced Ek to two prison terms of life without possibility of parole.

All three defendants timely appealed their convictions and sentences to the California Court of Appeal, Third District. As to defendants Keomanivong and Ek, the Court of Appeal found errors in sentencing and modified the sentences accordingly,[2] and reversed Le's conviction in an unpublished reasoned decision.[3] The California Supreme Court summarily denied review in a "postcard denial" without opinion or citation to authority on February 7, 2007. Ek did not seek collateral review in the California state courts. Ek timely filed his petition for relief in this court on May 5, 2008.

## II. GROUNDS RAISED/DEFENSES

In his petition Ek raises four grounds for relief: (1) trial court improperly restricted jury *voir dire*; (2) trial court failed to discharge a juror depriving him of a fair and impartial jury; (3) trial court erroneously instructed the jury on pretextual self-defense (CALJIC No. 5.55); and (4) prosecutorial misconduct in closing argument in misstating the proof beyond a reasonable

---

[2] One of the life without possibility of parole sentences was vacated.

[3] *People v. Le*, 2006 WL 2949021 (Cal. App. October 16, 2006).

doubt standard. Respondent contends the third ground is procedurally barred. Respondent raises no other affirmative defense.[4]

### III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[5] The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[6] The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[7] Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[8] When a claim falls under the

---

[4] *See* Rules—Section 2254 Cases, Rule 5(b).

[5] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[6] *Williams*, 529 U.S. at 412.

[7] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[8] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753–54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

"unreasonable application" prong, a state court's application of Supreme Court precedent must be objectively unreasonable, not just incorrect or erroneous.[9] The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing that the state court determination was incorrect.[10] "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[11] The standard under which this court must assess the prejudicial impact of constitutional error in a state-court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[12] Because state court judgments of conviction and sentence carry a presumption of finality and legality, the petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[13]

In applying this standard, this court reviews the last reasoned decision by the state court,[14] which in this case was that of the California Court of Appeal. Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption

---

[9] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[10] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[11] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

[12] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)).

[13] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

[14] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004).

by clear and convincing evidence.[15] This presumption applies to state trial courts and appellate courts alike.[16]

## IV. DISCUSSION

Ground 1: Restricted Jury *Voir Dire*.

Prior to the commencement of the trial, the San Joaquin Superior Court imposed certain restrictions on jury *voir dire*. The California Court of Appeal summarized the *voir dire* procedure adopted by the San Joaquin Superior Court:

> Prior to trial, the prosecutor indicated he intended to use a questionnaire in jury selection. The trial court told the parties that since there were three defendants and use of a juror questionnaire was so time consuming, they had a choice: they could use a questionnaire, in which case no oral voir dire would be allowed, or they could select the jury through oral voir dire, with time limits. The prosecutor objected to having to choose and asked why. The court explained the reason was time. He thought a juror questionnaire was "a big waste" of time. The prosecutor continued to object, claiming it was "not fair." The trial court believed juror questionnaires should be reserved for unique cases; the court was firm that if a questionnaire was used, he would not voir dire any potential jurors.
>
> The defendants all wanted to use a questionnaire. Keomanivong's counsel suggested the questionnaire be used for background and voir dire be permitted on the law. The court told the prosecutor challenges for cause would be based solely on the questionnaire, without further voir dire. The court would allow some questions to rehabilitate a potential juror.
>
> After the questionnaires were completed by prospective jurors, the court maintained its position of no voir dire. The prosecutor objected, noting some questions were left blank. The court responded that was what peremptory challenges were for. Counsel should make their decision whether to use a questionnaire based on whether people are smart enough to complete it.
>
> Prospective jurors were given a 12-page questionnaire to complete. The questionnaire asked for background information about the juror's age, marital status, employment, military service, education, and experience with the legal

---

[15] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[16] *Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004).

5

system. It asked about prior jury service and law enforcement contacts. There were a series of questions concerning knowledge of and opinions about gangs. It then asked about the juror's knowledge of the case. The final questions addressed opinions about certain legal principles, including aiding and abetting, self-defense, the presumption of innocence, bias, and firearms.[17]

Ek argues that this procedure, and the trial court's inconsistent application of the rehabilitation exception allowing followup oral questioning, produced a *voir dire* so deficient that it violated the Sixth Amendment right to an impartial jury. The California Court of Appeal rejected the defendants' argument:

> Defendants contend the trial court erred in eliminating or restricting oral voir dire. The Attorney General responds that defendants' failure to object below bars the contention on appeal. It is true that defendants did not voice objections to the trial court's procedure for jury selection at the time. Ek raised the restriction on voir dire as one ground for his motion for a new trial. The prosecutor, however, repeatedly raised objections to the elimination of oral voir dire and the trial court overruled his objections. There is no basis in the record for believing an objection by defense counsel would have fared better. Failure to object does not bar appellate review of an issue when an objection would have been futile. (*People v. Hill* (1998) 17 Cal.4th 800, 820; *People v. Abbaszadeh* (2003) 106 Cal.App.4th 642, 648.) Since the trial court proceeded despite vigorous objection by the prosecution, we review defendants' contention.
>
> Code of Civil Procedure section 223 addresses the examination of prospective jurors in criminal cases. It provides that the court shall conduct the initial examination and the court may limit the oral and direct questioning of prospective jurors by counsel.FN3 (Code Civ. Proc., § 223.) "Examination of prospective jurors shall be conducted only in aid of the exercise of challenges for cause." The trial court's exercise of its discretion in conducting voir dire "shall not cause any conviction to be reversed unless the exercise of that discretion has resulted in a miscarriage of justice, as specified in Section 13 of Article VI of the California Constitution."
>
> > FN3. The trial court expressed concern about counsel wanting to ask the same questions that were on the questionnaire and taking too much time. The court can control the process by limiting the questions that may be asked by counsel. (Citation omitted.)

---

[17] *Le*, 2006 WL 2942091 at *3-4.

6

A juror questionnaire may be used for assisting the voir dire process. (Citation omitted.)

Voir dire, the legal term describing the process of jury selection, "is itself a combination of two French verbs meaning 'to see' and 'to say.' [Citation.]" (*People v. King* (1987) 195 Cal.App.3d 923, 932.) The importance of observing prospective jurors as they answer questions is well established. "Voir dire plays a critical function in assuring the criminal defendant that his Sixth Amendment right to an impartial jury will be honored. Without an adequate voir dire the trial judge's responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence cannot be fulfilled. [Citations.]" (*Rosales-Lopez v. United States* (1981) 451 U.S. 182, 188 [68 L.Ed.2d 22, 28].) The selection of jurors is often based on their demeanor and response to questions. (*Ibid.; People v. Tuilaepa* (1992) 4 Cal.4th 569, 587; *People v. Wheeler* (1978) 22 Cal.3d 258, 276; see also *Mu'min v. Virginia* (1991) 500 U.S. 415, 424 [114 L.Ed.2d 493, 505].)

One potential problem that oral voir dire can screen is illustrated in this case. At least one prospective juror had difficulty understanding spoken English. Although this prospective juror noted the problem on the questionnaire, there could be situations where a prospective juror is reluctant to disclose his unfamiliarity with spoken English and the difficulty would not be noticed without oral voir dire.

Selection of a jury solely through the use of a written questionnaire, without any oral voir dire, raises serious questions. For example, in *People v. Stewart* (2004) 33 Cal.4th 425, 440, a capital case, the trial court excused five potential jurors for cause over defense objection based solely on their answers to a questionnaire, without an opportunity for follow-up questions. The California Supreme Court found the excusals were error that required the reversal of defendant's death sentence. (*Id.* at pp. 454-455 .) The court noted the resources available to assist the trial court in properly conducting voir dire "proceed on the assumption that, except for prospective jurors who both parties stipulate should be excused for cause [citation], a juror questionnaire will not *obviate* the need for oral voir dire, but instead merely will shorten the time necessary to be spent on oral voir dire. [Citation.]" (*Id.* at p. 450, fn. 14, italics in original, but see *People v. Avila* (2006) 38 Cal.4th 491, 531 [holding excusal for cause based solely on written questionnaire may be permissible in capital case].)

If the trial court had conducted jury selection based solely on the written questionnaire, as it initially stated it would, we might have to find reversible error. Fortunately, we need not decide that question because that is not what happened in this case. After a challenge for cause, the court allowed the opposing party to

7

rehabilitate the challenged prospective juror and allowed questions concerning ambiguous or troubling answers on the questionnaire. Thus, there was extensive oral voir dire by counsel of some prospective jurors.

We turn now to defendants' specific claims of error. Initially, we note defense counsel did not exhaust their peremptory challenges or object to the jury as constituted, nor did they justify their failure to do so. Therefore, they may not challenge on appeal the trial court's denial of any challenge for cause. (*People v. Lewis* (2001) 25 Cal.4th 610, 634; *People v. Waidla* (2000) 22 Cal.4th 690, 715.)

Le contends a substantial number of juror questionnaires provided insufficient information on which to base intelligent decisions to challenge the prospective jurors. Le fails, however, to cite any instance in which he wanted to ask follow-up questions and the trial court precluded him from doing so. We recognize that when voir dire is so inadequate as to prevent intelligent exercise of challenges, the use of peremptory challenges cannot cure the harm, so exhaustion of peremptory challenges is not required to raise the issue on appeal. (*People v. Bolden* (2002) 29 Cal.4th 515, 537-538.) In this case, the trial court did allow follow-up questions when requested. Therefore, we cannot say the jury selection process was completely inadequate. Le must show he was denied the opportunity for adequate voir dire and he fails to do so.

Ek's argument is more detailed, citing specific answers from several prospective jurors he considers troubling. The record does not demonstrate that Ek's trial counsel shared the same concern as Ek's appellate counsel. As to those prospective jurors who were not seated, Ek fails to show any prejudice from the allegedly inadequate voir dire. As to those prospective jurors who were actually seated as jurors, Ek fails to show trial counsel raised any concern about their answers or requested any follow-up questions. There was a challenge to juror No. 9, whose answers appeared to assume defendants were gang members. The trial court admonished the prospective jurors that gang membership remained something to be proven. The court denied Le's challenge to juror No. 10, accepting her claim she could give full attention to the trial despite her personal problems. This juror was later excused. Two alternate jurors who were later seated as jurors were subject to oral voir dire. Ek has failed to show the trial court denied any request for oral voir dire of any prospective juror who was later seated as a juror.

While the trial court controls the manner of jury selection, at a minimum defendant and his counsel should be given the opportunity to see the prospective jurors respond to questions. Here the trial court afforded that opportunity only as to some prospective jurors, to rehabilitate those challenged for cause or to clarify ambiguous or troubling answers on the questionnaire. We do not condone such a radical departure from the usual voir dire in a special circumstance murder case.

Nonetheless, given that voir dire is only for the purpose of exercising challenges for cause (Code Civ. Proc., § 223), only the prosecutor objected to the trial court's conduct of voir dire, and defendants have failed to show their request to voir dire any prospective juror who actually sat was denied, we find no reversible error.[18]

As the Supreme Court observed in *Rosales-Lopez* cited by the California Court of Appeal:

> Despite its importance, the adequacy of *voir dire* is not easily subject to appellate review. The trial judge's function at this point in the trial is not unlike that of the jurors later on in the trial. Both must reach conclusions as to impartiality and credibility by relying on their own evaluations of demeanor evidence and of responses to questions. See *Ristaino v. Ross*, 424 U.S. 589, 595, 96 S.Ct. 1017, 1020, 47 L.Ed.2d 258 (1976), quoting *Rideau v. Louisiana*, 373 U.S. 723, 733, 83 S.Ct. 1417, 1422, 10 L.Ed.2d 663 (1963) (Clark, J., dissenting). In neither instance can an appellate court easily second-guess the conclusions of the decision-maker who heard and observed the witnesses.
>
> Because the obligation to impanel an impartial jury lies in the first instance with the trial judge, and because he must rely largely on his immediate perceptions, federal judges have been accorded ample discretion in determining how best to conduct the *voir dire*. In *Aldridge v. United States*, 283 U.S. 308, 51 S.Ct. 470, 75 L.Ed. 1054 (1931), the Court recognized the broad role of the trial court: "[T]he questions to the prospective jurors were put by the court, and the court had a broad discretion as to the questions to be asked." *Id.*, at 310, 51 S.Ct., at 471. See also *Ham v. South Carolina*, 409 U.S. 524, 528, 93 S.Ct. 848, 851, 35 L.Ed.2d 46 (1973) (recognizing "the traditionally broad discretion accorded to the trial judge in conducting *voir dire*...."). Furthermore, Rule 24(a), Federal Rules of Criminal Procedure, provides that the trial court may decide to conduct the *voir dire* itself or may allow the parties to conduct it. If the court conducts it, the parties may "supplement the examination by such further inquiry as [the court] deems proper"; alternatively, the court may limit participation to the submission of additional questions, which the court must ask only "as it deems proper."[19]

Given the broad discretion the Supreme Court has accorded to trial judges in conducting voir dire, this court cannot say that the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by

---

[18] *Le*, 2006 WL 2949021 at *4-6.

[19] *Rosales-Lopez*, 451 U.S. at 188-89.

the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[20] Nor can this court find that the state court unreasonably applied the correct legal principle to the facts of Ek's case within the scope of *Andrade-Williams-Schriro*. Perhaps most importantly, as the California Court of Appeal noted, there is no showing that the trial court denied any request for oral *voir dire* of any prospective juror who was later seated as a juror.[21] Ek is not entitled to relief under his first ground.

Ground 2: Failure to Discharge Juror.

In the course of the trial, a juror had a domestic violence altercation with his girlfriend and reported her to the police. Ek contends that this compromised the juror's ability to be impartial and the juror should have been excused. The California Court of Appeal summarized the background as follows:

> During trial, the prosecutor reported to the court on a "juror problem." Juror No. 12 and his girlfriend were at a restaurant or bar and got into a fight. The fight continued at home; the girlfriend threw things and pulled the phone out. The police responded and took statements. The district attorney sent the case back for further investigation. The trial court was concerned that juror No. 12 might feel either beholden to or mad at the district attorney depending on what happened; the court wanted to keep the juror out of the district attorney's office. The parties agreed the court needed to talk to juror No. 12.
>
> The court told the juror the matter was under investigation and the most important thing was that it not affect his judgment in this case. The juror explained his girlfriend was arrested; he had posted bail for her, but they were living apart and had not reconciled. He did not intend to pursue the complaint. They had both

---

[20] 28 U.S.C. § 2254(d).

[21] *See United States v. Anzalone*, 886 F.2d 229, 234 (9th Cir. 1989) ("[Ek's] attorney was allowed to submit questions to the district judge to be asked on voir dire and did not submit this question. He cannot now claim he was denied a fair trial solely because this question was not asked.")

10

been drinking and things got out of hand. Neither he nor his girlfriend told the truth and he wanted the case dropped.

Le made a motion to excuse juror No. 12 because he was a witness in a criminal case and he had admitted making false statements to the police. Ek and Keomanivong agreed the juror was compromised. The prosecutor said they were speculating; he preferred to wait and see what happened. Le noted that if there were more alternates, there would be no discussion. The court agreed, but there was only one alternate left. The court decided to follow the prosecutor's suggestion and let the matter run its course. If something happened, they could revisit the matter.

Le argued this case involved witnesses who had changed their story and the prosecutor's argument that such witnesses should be believed would resonate with juror No. 12 because "I've sinned, too, brother." He argued keeping juror No. 12 violated due process.

The court decided to wait and admonished the juror not to discuss the matter with the other jurors. Towards the end of the trial, the court raised the matter. There was no news on the case of the juror's girlfriend and juror No. 12 remained on the jury.

Ek's motion for a new trial was based, in part, on the failure to remove juror No. 12.

All defendants contend the trial court erred in failing to excuse juror number 12 because he had lied to the police and was entangled with the district attorney's office.[22]

The California Court of Appeal rejected the defendants' arguments, holding:

Penal Code section 1089 provides in part: "If at any time, whether before or after the final submission of the case to the jury, a juror dies or becomes ill, or upon other good cause shown to the court is found to be unable to perform his or her duty, ... the court may order the juror to be discharged...." "'Before an appellate court will find error in failing to excuse a seated juror, the juror's inability to perform a juror's functions must be shown by the record to be a "demonstrable reality." The court will not presume bias, and will uphold the trial court's exercise of discretion on whether a seated juror should be discharged for good cause under section 1089 if supported by substantial evidence. [Citation.]' [Citations.]" (*People v. Jablonski* (2006) 37 Cal .4th 774, 807.) The record does

---

[22] *Le*, 2006 WL 2949021 at *6-7.

11

not show as a demonstrable reality that juror No. 12 was unable to fulfill his obligations as a juror.

Le relies on cases where a juror lied to get on and stay on the jury, particularly *Dyer v. Calderon* (9th Cir.1998) 151 F.3d 970 (*Dyer* ). We find *Dyer* distinguishable. In *Dyer,* during voir dire a juror failed to disclose the killing of her brother that was similar to the crime being tried after she saw other jurors disclose lesser crimes and be dismissed. Later, when questioned about her brother's death, she lied and pretended his death was an accident. From these responses the reviewing court drew the inference that the juror "lied to preserve her status as a juror and to secure the right to pass on Dyer's sentence." (*Id.* at p. 982.) The court found the juror's repeated lying was incompatible with the truthseeking process of a trial. (*Id.* at p. 983.) The magnitude of her lies exposed a rare case of presumed juror bias. (*Id.* at p. 984.)

A far different situation is presented here. Although juror No. 12 apparently did not tell the truth to the police when they arrested his girlfriend, later, when sober and not fighting, he was remorseful and wanted to set the record straight. His misstatements had no relationship to the trial on which he was a juror and did not show the contempt for the process so evident and disturbing in *Dyer, supra,* 151 F.3d 970. Nor did he attempt to cover up his falsehoods; he was honest (and chagrined) when questioned by the court.

Keomanivong relies on cases where a juror was involved with the district attorney's office or charged with a crime. In *People v. Farris* (1977) 66 Cal.App.3d 376, 385, a juror was dismissed after he was in custody on a felony charge. The appellate court found good cause for the dismissal. The nature and extent of the charges against the juror, his attitudes evinced towards the police, and his concealment of his past and present scrapes with the law on voir dire showed his unfitness to serve as a juror. (*Id.* at pp. 386-387.) In *In re Devlin* (1956) 139 Cal.App.2d 810, at page 813, overruled on another point in *Larios v. Superior Court* (1979) 24 Cal.3d 324, 333, the court held where a juror in a criminal case is charged with a crime and expresses the desire to be relieved, the trial court has discretion to determine there is good cause to excuse the juror.

This case is more similar to *People v. Holt* (1997) 15 Cal.4th 619. In *Holt,* a juror's son was arrested for felony assault. On appeal, defendant contended the juror should have been excused because he might have had some undisclosed liability in the incident or have harbored bias. The high court disagreed, finding the defense concerns that the juror was biased or hoped to curry favor with the prosecution were speculation. (*Id.* at pp. 658-659.) Although *Holt* is distinguishable because there the defense did not seek to excuse the juror at trial, it is on point that pure speculation will not show a "demonstrable reality"

sufficient to overturn the trial court's discretion in deciding whether to excuse a seated juror. (*Id.* at p. 659.)

Because defendants have failed to show as a "demonstrable reality" that juror No. 12 could not perform the functions of a juror, their contention that he should have been excused fails.[23]

It is well-established constitutional law that a criminal defendant has a right under the Sixth Amendment to an impartial jury.[24] It is also well-established that a "defendant is entitled to a fair trial, but not a perfect one, because there are no perfect trials."[25] Under Supreme Court precedent, the appropriate remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to establish bias.[26] The trial court followed that procedure in this case. In a federal habeas proceeding, findings of the state court that a juror's conduct did not impair his ability to render an impartial verdict are presumptively correct.[27] In this case, there is no evidence that the juror was unable to carry out his functions as a juror, was not impartial, or allowed his personal experience to interfere with weighing the evidence, or that he decided the case on any basis other than the evidence. Thus, Ek has not shown that the failure to excuse the juror prejudiced him in any way.[28]

---

[23] *Le*, 2006 WL 2949021 at *7-8.

[24] *Irwin v. Dowd*, 366 U.S. 717, 722 (1961); *see Peters v. Kiff*, 407 U.S. 493, 501-02 (1972); *Turner v. Louisiana*, 379 U.S. 466, 471 (1965).

[25] *Brown v. United States*, 411 U.S. 223, 231-32 (1973) (internal citations and quotation marks omitted).

[26] *Smith v. Phillips*, 455 U.S. 209, 215 (1982); *Remmer v. United States*, 347 U.S. 227, 229 (1954); *see Dennis v. United States*, 339 U.S. 162, 171-72 (1950) ("Preservation of the opportunity to prove actual bias is a guarantee of a defendant's right to an impartial jury.").

[27] *See Smith*, 455 U.S. at 218.

[28] *See Davis v. Woodford*, 384 F.3d 628 (9th Cir. 2004); *Anderson v. Calderon*, 232 F.3d 1053, 1098-99 (9th Cir. 2000), *overruled on other grounds by Osband v. Woodford*, 290 F.3d 1036 (9th Cir. 2002).

This court cannot say that the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[29] Nor can this court find that the state court unreasonably applied the correct legal principle to the facts of Ek's case within the scope of *Andrade-Williams-Schriro*. Ek is not entitled to relief under his second ground.

Ground 3: Erroneous Jury Instruction (CALJIC No. 5.55).

Ek asserts that there was insufficient evidentiary support to give CALJIC No. 5.55 on contrived self-defense. Ek argues this deprived him of a meaningful opportunity to present a defense. In rejecting Ek's position, the California Court of Appeal held:

> Ek contends there was no evidence to support giving CALJIC No. 5.55 on contrived self-defense. He contends the evidence shows either aggression and murder by defendant or no aggression and selfdefense; there was no middle ground.
>
> He also contends the last paragraph of CALJIC No. 5.17 erroneously limited the defense of imperfect self-defense. The instruction tells the jury an actual but unreasonable belief in the necessity to defend against imminent peril is a defense to murder, but not voluntary manslaughter. The last paragraph reads: "However, this principle is not available, and malice aforethought is not negated, if the defendant by his unlawful or wrongful conduct created the circumstances which legally justified his adversary's use of force." Ek contends this paragraph is misleading because it suggests that a factual mistake as to which side was the aggressor disqualifies the claim of imperfect self-defense. He argues the jury would have rejected imperfect self-defense if it found ABZ shot first, regardless of Ek's subjective belief.

---

[29] 28 U.S.C. § 2254(d).

For the reasons set forth above, we find Ek forfeited these contentions by his failure to object to these instructions below. Any error in these instructions was not a miscarriage of justice.[30]

Respondent contends that because the Court of Appeal held that Ek in failing to object to the instruction in the trial court he forfeited this claim, Ek defaulted and he is, thus, procedurally barred from raising it in a federal habeas proceeding. The court agrees. Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."[31] This Court may not reach the merits of procedurally defaulted claims, that is, claims "in which the petitioner failed to follow applicable state procedural rules in raising the claims . . . ."[32] Although the ultimate burden of proving adequacy of a state procedural bar is on the government, once it has "adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner."[33] Ek may satisfy his burden "by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule."[34] Ek does not address procedural default in his traverse. Consequently, Ek has not properly joined this issue. Even had Ek properly joined the issue, the

---

[30] *Le*, 2006 WL 2949021 at *35. The Court of Appeal had previously stated with respect to Ek's contentions regarding different self-defense instructions: "The trial court went over the instructions it intended to give, allowing any objections or argument to be placed on the record. Ek did not object to any of the self-defense instructions, although he did object to other instructions. Defendant's failure to object to a jury instruction forfeits the claim on appeal unless he demonstrates a miscarriage of justice. (*People v. Christopher* (2006) 137 Cal.App.4th 418, 426-427.)." 2006 WL 2949021 at * 34.

[31] *Coleman v. Thompson,* 501 U.S. 722, 729 (1991).

[32] *Sawyer v. Whitley,* 505 U.S. 333, 338 (1992).

[33] *Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir. 2003).

[34] *Id*.

15

California contemporaneous-objection requirement to preserve a challenge to an instruction on appeal is an independent and adequate state ground barring review in this court.[35]

Because Ek's instructional error claim was defaulted in state court on an adequate and independent state ground, it cannot be considered in federal habeas proceedings unless Ek can demonstrate cause for the default and actual prejudice.[36] As noted above, Ek does not discuss the procedural default defense. Consequently, Ek has not only failed to properly join the issue, Ek has totally failed to establish that it should not be applied in this case. Even assuming Ek could show cause, he cannot show prejudice. To prove a fundamental miscarriage of justice, Ek must show that a constitutional violation probably resulted in his conviction despite his actual innocence.[37] Although at the gateway stage Ek need not establish his innocence as an "absolute certainty," Ek must demonstrate that more likely than not, no reasonable juror could find him guilty beyond a reasonable doubt.[38] Ek's third ground must be dismissed.

---

[35] *See Paulino v. Castro*, 371 F.3d 1083, 1093 (9th Cir. 2004).

[36] *See Coleman v. Thompson,* 501 U.S. 722, 729 (1991).

[37] *See Schlup v. Delo,* 513 U.S. 298, 321-25 (1995) (linking miscarriages of justice to actual innocence); *United States v. Olano,* 507 U.S. 725, 736 (1993) ("In our collateral-review jurisprudence, the term 'miscarriage of justice' means that the defendant is actually innocent."); *Murray v. Carrier,* 477 U.S. 478, 496 (1986) ("in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.")

[38] *House v. Bell*, 547 U.S. 518, 538 (2006).

Ground 4: Prosecutorial Misconduct.

Ek contends that the prosecutor misstated the burden of proof, which resulted in a denial of his due process right to be found guilty beyond a reasonable doubt. The underlying facts, as summarized by the California Court of Appeal, were:

> At the end of his rebuttal argument, the prosecutor addressed the concept of reasonable doubt. He first told the jury that reasonable doubt could not be reduced to a numerical percentage, such as 90 percent certain. He indicated he could never reach 100 percent certainty and was not required to answer every question posed by the evidence. He then stated:
>
> "I don't like the instruction on beyond a reasonable doubt because I think it's phrased in the negative. It says you have a reasonable doubt if you don't have an abiding conviction of the truth of the charge. [¶] To me, in my mind, it's easier if you flip it around and put it in the positive. If you have an abiding conviction of the truth of the charge, then you're convinced beyond a reasonable doubt. And it's very simple when you look at it that way. [¶] You have to have an abiding conviction of the truth of the charge. Well, what does abiding mean? Abiding means lasting. What does conviction mean? It means strong belief. You have to have a lasting strong, belief of the truth of the charge to convict. And that is all. That is essentially the same standard-"
>
> At this point Le's counsel asked to approach. Before argument, in response to the prosecutor's concern about speaking objections, the trial court ruled any objection to argument had to be made by approaching the bench. After the unreported conference, the trial court instructed the jury: "Again, ladies and gentlemen, I remind you the definitions that you are to use have to come from these instructions."
>
> The prosecutor continued his argument: "This abiding conviction has to last-well, actually there's no set time limit on how long it should last. If you want to forget about us in a month and forget that you ever heard about this case, that's okay. [¶] As long as you can recite somewhat the facts of this case, that you know that three carloads of ABZ gang members armed themselves with two rifles and two handguns, drove into Bedlow looking for a fight with rivals and they shot up that street, as long as you can remember that, that's how long your abiding conviction should last." The prosecutor ended his argument shortly thereafter.
>
> During a 15-minute break before jury instructions, the reporter read back this argument about reasonable doubt. Le's counsel contended the argument after the admonishment made the misstatement of the reasonable doubt standard "even

worse." He urged the admonishment was insufficient; the argument lessened and diluted the burden of proof. He asked for a mistrial. Ek and Keomanivong joined in the motion, which was denied.

Defendants contend the prosecutor's argument that an abiding conviction need not last long reduced the burden of proof and was a structural error requiring reversal.[39]

The California Court of Appeal, in rejecting the arguments of the defendants, held:

> To establish guilt beyond a reasonable doubt, the factfinder must reach a subjective state of near certitude of the guilt of the accused. (*Jackson v. Virginia* (1979) 443 U.S. 307, 315 [61 L.Ed .2d 560, 571].) An abiding conviction has a lasting and permanent nature; it must be strongly and deeply held. (*People v. Brigham* (1979) 25 Cal.3d 283, 290-291.) "The word 'abiding' here has the signification of settled and fixed, a conviction which may follow a careful examination and comparison of the whole evidence." (*Hopt v. Utah* (1887) 120 U.S. 430, 439 [30 L.Ed. 708, 711].)
>
> The significance of "abiding conviction" with respect to the reasonable doubt standard is the depth and certainty of the belief, not how long the belief is held. The prosecutor told the jury an abiding conviction was "a lasting, strong belief of the truth of the charge to convict." We find no error in this formulation.
>
> To the extent the prosecutor may have weakened the reasonable doubt standard by his further discussion of how long an abiding conviction must last, the pertinent question is whether there is a reasonable likelihood the jury understood it could convict based on proof of less than beyond a reasonable doubt. (*Victor v. Nebraska* (1994) 511 U.S. 1, 6 [127 L.Ed.2d 583, 591].) We conclude there was no such reasonable likelihood. The trial court properly instructed the jury on the presumption of innocence, the reasonable doubt standard, and the People's burden to prove guilt beyond a reasonable doubt. Further, the court instructed the jury it should use the definitions provided by the court. Absent some indication in the record to the contrary, we presume the jury followed the court's instructions. (*People v. Jablonski, supra,* 37 Cal.4th 774, 806-807; *People v. Boyette* (2002) 29 Cal.4th 381, 436.) Finally, all three defense counsel stressed the reasonable doubt standard in their closing arguments.[40]

---

[39] *Le*, 2006 WL 2949021 at *14-15.

[40] *Le*, 2006 WL 2949021 at *15.

"To warrant habeas relief, prosecutorial misconduct must 'so infect the trial with unfairness as to make the resulting conviction a denial of due process.'"[41] It is uncontested that the jury instructions given by the trial court properly defined the beyond a reasonable doubt standard. This court, as did the California Court of Appeals, must assume in the absence of evidence to the contrary that the jury followed the instructions given by the trial court.[42] "'The jury is regularly presumed to accept the law as stated by the court, not as stated by counsel.'"[43] This presumption has not been overcome in this case as there is no evidence that the jury was confused about the proof beyond a reasonable doubt standard. The jury never sought clarification of the standard and, as the California Court of Appeal noted, all three defense counsel stressed the reasonable doubt standard in their closing arguments.[44]

On the record before it, this court cannot say that the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[45] Nor can this court find that the state court unreasonably applied the correct legal principle to the facts of Ek's case within the scope of *Andrade-Williams-Schriro*. Ek is not entitled to relief under his fourth ground.

---

[41] *Davis v. Woodford*, 384 F.3d 628, 644 (9th Cir. 2004), quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).

[42] *See Weeks*, 528 U.S. at 234; *Richardson,* 481 U.S. at 206; *Francis*, 471 U.S. at 324 n.9.

[43] *United States v. Medina Casteneda*, 511 F.3d 1246, 1250 (9th Cir. 2008) (quoting *United States v. Rodrigues*, 159 F.3d 439, 451 (9th Cir. 1998).

[44] *See id.*

[45] 28 U.S.C. § 2254(d).

## V. CONCLUSION AND ORDER

Ek is not entitled to relief under any grounds raised in the petition. Accordingly,

**IT IS ORDERED THAT** the Petition for a writ of habeas corpus under 28 U.S.C. § 2254 is **DENIED**.

**IT IS FURTHER ORDERED THAT** the court declines to issue a Certificate of Appealability.[46] Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[47]

The Clerk of the Court will please final judgment accordingly.

Dated: March 8, 2010 /s/ JOHN W. SEDWICK
United States District Judge

---

[46] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (a COA should be granted where the applicant has made "a substantial showing of the denial of a constitutional right," *i.e.,* when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (internal quotation marks and citations omitted).

[47]*See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.